IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MERRYMAN EXCAVATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 06 C 5160 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION 150, AFL-CIO, et al., | ) ) ) ) | |
| Defendants. | | |

MEMORANDUM OPINION AND ORDER

Merryman Excavation, Inc. ("Merryman") has brought suit against the International Union of Operating Engineers, Local 150, AFL-CIO (the "Union") to vacate several arbitration awards for lack of jurisdiction. Merryman sought a Temporary Restraining Order ("TRO") against the Union to prevent the Union from striking or threatening to strike while the parties resolve the issues before this Court.

At an initial hearing on September 26, 2006, the parties briefly argued Merryman's Motion for TRO. At that hearing, the Union took the position that the Norris-LaGuardia Act (the "NLA") barred this Court from issuing an injunction against a strike, and argued that even if the Union might have bargained away its general right to strike as part of the Collective Bargaining Agreement (the "CBA"), Article XX of the CBA carved out an exception to the general no-strike provision for any issue involving "wages and benefits." Since the Union considered the arbitration awards "wages and benefits," the Union argued that it had an unconditional right to strike. Merryman, on the other hand, argued that the *Boys Markets* exception to the NLA, that

permits courts to enforce no-strike provisions in a CBA via injunctive relief, should govern this case. *See Boys Markets, Inc. v. Retail Clerk's Union Local 770,* 398 U.S. 235, 253-254 (1970).

Because the parties had not developed a record concerning the issue of the application of Article XX, the parties agreed to postpone hearing on the TRO pending full briefing of all the issues. At a second hearing on October 26, 2006, the parties thoroughly argued Merryman's Motion for TRO, including the application of Article XX. At the conclusion of that hearing, the Court determined that: (i) the Article XX exception in the CBA does not apply to the arbitration awards, and (ii) there is a general no-strike provision in the CBA, making *Boys Markets* potentially applicable. Oct. 26, 2006 Tr. at 104-106. However, following the instruction of the court in *Boys Markets*, the Court reviewed the traditional equitable factors meriting injunctive relief and determined that while Merryman had a likelihood of success on the merits in light of the decision *MJ Electric Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 2003 WL 21640474 (N.D. Ill. 2003), Merryman had not demonstrated irreparable harm and had an adequate remedy at law. Following the reasoning in *Skokie Valley Beverage Co. v. Beer, Soft Drinks, etc.,* 563 F. Supp.460, 463 (N.D. Ill. 1983), the Court held that Merryman could pay the arbitration awards in dispute, totaling approximately $88,000, to the Union in order to avoid the possibility of a strike while the Court examined the merits of the dispute over the JGC's award.

Merryman now moves this Court to reconsider its finding that equitable considerations do not warrant the issuance of a TRO against the Union. As the Court ruled orally at the two previous hearings, this opinion addresses in full the Court's decision to deny Merryman injunctive relief. As this Motion for TRO has been entered and continued for nearly two months, with extensive briefing and argument by both parties, the Court construes the Motion for TRO as

a Motion for Preliminary Injunction. The Court denies the Motion to Reconsider, and in accordance with the oral ruling of October 26, 2006, denies injunctive relief to Merryman.

Discussion

1. The Norris-LaGuardia Act

Subject to a few narrow exceptions, the NLA deprives this court of jurisdiction to grant an injunction in a labor dispute. The NLA expresses a basic policy against the injunction of activities of labor unions. *See Burlington N. R.R. Co. et al. v. Bhd. of Maint. of Way Employees, et al.,* 481 U.S. 429, 437 (1987). Section 101 of the NLA states that "[n]o court of the United States…shall have jurisdiction to issue any…temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this Act." 29 U.S.C. § 101. Section 113(c) explains that the term "'labor dispute' includes any controversy concerning terms or conditions of employment." 29 U.S.C. § 113(c).

The term "labor dispute" in the NLA "must not be narrowly construed because the statutory definition itself is extremely broad and because Congress deliberately included a broad definition." *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Assoc.*, 457 U.S. 702, 712 (1982). Most NLA cases involve two disputes: the first is the "underlying dispute," which is usually the event or condition that triggers a strike or threat of strike; the second is the parties' dispute over whether the union's decision to strike or threaten strike was in violation of the parties' CBA. *Jacksonville*, 457 U.S. at 710. The NLA does not require "*each* dispute relevant to the case to be a labor dispute." *Jacksonville*, 457 U.S. at 711. (emphasis in original). Rather, "[t]he [NLA] merely requires that the case involve 'any' labor dispute." *Jacksonville*, 457 U.S. at 711. Thus, a federal court may not issue an injunction against "a secondary activity growing out of any labor dispute." *Burlington N. R.R. Co. et al.,* 481 U.S. at 434.

3

In the case, the NLA generally applies to this case. The NLA prohibits this Court from granting an injunction if the dispute is one "involving or growing out of a labor dispute." 29 U.S.C. § 101. While the particular aspect of the dispute that brings the parties to this Court is judicial review of the jurisdiction of the JGC, the dispute at issue originated from claims that Merryman violated various terms and conditions of employment set forth in the CBA. The underlying dispute is one concerning the terms and conditions of employment, and therefore under the umbrella of the NLA. *See Burlington N. R.R. Co. et al.,* 481 U.S. at 440.

2. The *Boys Markets* Exception

Even if the NLA's general prohibition against injunctions applies, this Court may issue an injunction if Merryman can prove that the exception set forth in *Boys Markets, Inc. v. Retail Clerk's Union Local 770,* 398 U.S. 235, 253-254 (1970) applies to the circumstances here. *Boys Markets* allows a district court to enter injunctive relief to enjoin a union from striking over a dispute that both parties are contractually obligated to arbitrate:

> [w]hen a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity – whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the Union from its issuance.

*Boys Markets*, 398 U.S. at 254. *Boys Markets* requires a district court to hold: (1) that the contract has the effect of binding both parties to arbitrate the dispute at issue; and (2) that ordinary principles of equity warrant an injunction. *Chicago Dist. Council of Carpenters Pension Fund v. K&I Constr.*, 270 F.3d 1060, 1064 (7th Cir. 2001). A plaintiff that is seeking an

injunction "is subject to an extra burden: it must both satisfy the normal requirements for an injunction and also demonstrate that the contract language binds the union to arbitrate the dispute that precipitated the strike." *K&I Constr.,* 270 F.3d at 1064.

Merryman *may* have met the first element of the *Boys Markets* exception. The CBA has a general no-strike provision and a provision binding the parties to arbitrate their disputes. Article XIII of the contractual grievance and arbitration procedure states that "[e]xcept as provided in Article XX, Section 1 and 2 and 4 of this Agreement, there shall be no strikes or work stoppages by the Union during the term of this Agreement." But, the Union claims that it did not bargain away its right to strike in cases such as the one before the Court, citing Article XX of the CBA. Article XX, §§1-2 of the CBA explain that if Merryman fails to pay pension, health and welfare, vacation, dues check off contributions or wages, then the arbitration procedure shall become inoperative and the Union "shall be entitled to resort to all legal and economic remedies, including the right to strike and picket until such failure to pay has been corrected." The Union and Merryman agree that Article XX, §§1-2 authorizes the Union to strike if Merryman fails to pay "wages and benefits." However, the parties differ in how each one characterizes the monetary amounts that the JGC awarded the Union in this case.

Most of the arbitration awards to the Union from the JGC at issue in this case are not "wages and benefits" such that Article XX's exception applies to this case. With two exceptions for the awards to Mr. Herron and Mr. Rabine, the vast majority of the awards the JGC ordered will be put in a Local 150 Assistance Fund. They are payments made as penalties against Merryman for either: (i) employing someone from a union other than Local 150 without following the proper procedures to obtain an exception, or (ii) failing to employ anyone in a position designated for a Local 150 member. These are disputes about the scope the CBA; they

are not disputes as to whether a Local 150 member who worked received his appropriate wage. The award to the Assistance Fund is a penalty against Merryman for failing to employ rather than a wage or benefit.

Since the Court finds that this dispute does not fall under Article XX, Merryman has at first glance met the first element of *Boys Markets* test: that the Union bargained away its right to strike in favor of binding arbitration. However, the Union made a second and alternative argument that is persuasive. Even if the Union is bound to arbitrate disputes instead of striking, the CBA does not prohibit the Union from striking to obtain an arbitration award that Merryman refuses to honor while seeking judicial review of that award. Under *Boys Markets*, the Union may be enjoined from striking *only to the extent* that it has contracted away its right to strike. *See Skokie Valley Beverage Co. v. Beer, Soft Drinks, Etc.,* 563 F. Supp.460, 463 (N.D. Ill. 1983).

The Union urges this court to adopt the approach of the *Skokie Valley* court by refusing to presume that a contractual no-strike provision extends to the pendency of judicial review where the judicial review procedure is not mentioned in the CBA itself. Since Merryman's request for judicial review "is not part of the arbitration process…a *Boys Markets* injunction cannot continue past the issuance of the arbitration award." Def.'s Memorandum 10; *see also* Sept. 26, 2006 Tr. at 79. In essence, the Union argues that it abided by the terms of the arbitration and it is Merryman that now refuses to abide by paying the judgment awarded against it; therefore, the entire policy underlying *Boys Markets* - to enforce contracts voluntarily entered - becomes moot if one party can breach its obligations under that contract.

Of course, this issue goes straight to the merits of this case. Did the JGC have jurisdiction to issue the award in the manner that it did? The factual circumstances surrounding the JGC hearings will require discovery, and extensive discussion of the merits is not appropriate

for a determination on a hearing for a preliminary injunction. However, the Court need not determine whether the first element of *Boys Markets* has been met because Merryman has failed to meet the second element of *Boys Markets* - that equitable principles merit the award of a preliminary injunction.

### 3. Equitable Principles

To demonstrate an entitlement to a preliminary injunction as a threshold matter, a plaintiff must show: (i) a likelihood of success on the merits; (ii) irreparable harm if the preliminary injunction is denied; (iii) and the inadequacy of any remedy at law. *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Once a plaintiff makes this showing, the Court balances the harm to the plaintiff if the preliminary injunction were wrongfully denied against the harm to the defendant if the injunction were wrongfully granted; and the impact on person not directly concerned in the dispute, or rather, the public interest. *Cooper*, 196 F.3d at 813.

As stated at the October 26, 2006 hearing, Merryman has met its burden to show a likelihood of success on the merits. To show a likelihood of success on the merits at the preliminary injunction stage, a plaintiff need only show "a better than negligible chance of succeeding." *Cooper*, 196 F.3d at 813; *quoting Boucher v. School Bd. of Greenfield*, 134 F.3d 821, 8254 (7th Cir. 1998). This is not the first dispute regarding this Union and an arbitration proceeding that has come before a court in this district. In *MJ Electric Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 2003 WL 21640474 (N.D. Ill. 2003), another court in this district declared an arbitration award null and void because the Union created an unfair panel by allowing a member of the Union to sit in the proceeding, even though that member did not cast a vote. At the September 26 hearing in this case, counsel for the Union, Ms. Melinda Hensel, admitted that she sat in the hearings and deliberations that led to the awards in dispute. Sept. 26,

2006 Tr. at 27-28; Oct. 26, 2006 Tr. at 107. With those limited facts before the Court, the Court finds on the basis of *MJ Electric* that there is a better than negligible chance that Merryman will succeed on the merits.

However, the Court found at the October 26, 2006 hearing that Merryman did not demonstrate irreparable harm from a threatened strike or demonstrate that it had no adequate remedy at law. Merryman now moves this Court to reconsider that determination.

On reconsideration, the Court remains convinced that the ruling of October 26, 2006 was correct. Merryman has not demonstrated that it will suffer irreparable harm if an injunction does not issue. At the October 26 hearing, the Court relied upon another case in this district in which a court denied a preliminary injunction to an employer faced with a threatened union strike over payment of an arbitration award. *See* Oct. 26, 2006 Tr. at 108; *Skokie Valley*, 563 F. Supp. 460 (N.D. Ill. 1983). The *Skokie Valley* court found that irreparable harm did not exist where the employer could avoid the strike by paying $60,000 as ordered by the arbitration award and recover those specific money damages if it was successful in its pursuit of judicial review. *Id.* at 465.

In this case, Merryman seeks judicial review of several awards totaling approximately $88,000. Merryman argues on reconsideration that requiring Merryman to pay the award pending adjudication by this Court in order to avert a strike "requires Merryman to pay-off Local 150 for manufactured JGC awards" and is "literally rewarding Local 150 for its wrongful conduct." Pltf. Mot. Recon. at 5. But it is not rewarding the Union for its conduct; if Merryman prevails on the merits, those judgments will be vacated and those funds will be returned. In the meantime, the arbitration awards are present - rightly or wrongly - and any action taken by the Union to strike over those awards can, by the Union's own representation, be averted by payment

8

of the award. Once paid, Merryman will be in full compliance with the terms of the CBA, and the Complaint that the Union breached the CBA remains pending before this Court.

Merryman has an adequate remedy at law in the form of a suit to vacate the arbitration awards for lack of jurisdiction. Merryman has filed suit for damages; if Merryman prevails the award will be vacated and the funds returned. But on a motion for preliminary injunction, the payment of the sum will cause no irreparable harm to Merryman, and will preserve the status quo while the parties litigate the merits of the underlying issue through the appropriate remedy at law.

The Court might view this argument differently if Merryman had shown to the Court that it was unable to or would suffer irreparable harm by paying the $88,000; indeed, the Court raised this issue upon initial hearing, and again when Merryman orally moved for reconsideration of the Court's ruling. *See* Sept. 26 Hearing Tr. at 80; October 26, 2006 Tr. at 114. But Merryman has made no representation that paying the small sum would cause irreparable harm to the multi-million dollar company. Merryman argues that the CBA contains no provisions for paying interest on the $88,000 in the event Merryman prevails and the funds are returned. Pltf. Mot. Recon. at 6. Payment of interest on the sum is more appropriate for a motion for fees and costs at the close of a successful case, and may be sought, if appropriate, at that time.

Balancing the harm to the Union of the issuance of an injunction against the harm to Merryman if an injunction does not issue, there is no doubt that Merryman would be harmed by a strike more than the Union would be harmed by an injunction from striking over this particular concern. But the NLA grants broad power to unions to strike with full knowledge that strikes will harm the employers, because the strike is the basis for a union's bargaining power. With respect to the ruling's impact on the public interest, if anything the promotion of stability during court review of the arbitral awards are "self-serving" interests related only to the employer and its

9

business interests. *Complete Auto Transit v. Chauffeurs, Teamsters & Helpers Local The Union No. 414,* 839 F. Supp. 1339, 1346 (N.D. Ind. 1993). The public policy of enforcing a contract, as Merryman argues, balances against the public policy of allowing a union to exercise its right to strike, leaving public interest concerns of limited value in determining whether to grant the preliminary injunction.

Finally, Merryman argued orally at the October 26 hearing that it had not paid the JGC award to the Union until this point because payment could be construed as consent to the jurisdiction of the JGC. Oct. 26, 2006 Tr. at 33-34. The Court respects this position and will not permit Merryman's payment of the disputed funds pursuant to this Court's decision to be used as evidence of Merryman's consent to be bound by the judgment of the JGC.

Therefore, it is ordered that Merryman's request for a preliminary injunction is denied, and the Union's Motion to Supplement is denied as moot.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: November 21, 2006