IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERRYMAN EXCAVATION, INC., )
)
)
Plaintiff, ) Case No. 06 C 5160
v. )
) Judge Virginia M. Kendall
INTERNATIONAL UNION OF OPERATING )
ENGINEERS, LOCAL 150, AFL-CIO, *et al.*, )
)
Defendant . )

MEMORANDUM OPINION AND ORDER

Merryman Excavation, Inc. ("Merryman") sues: (i) International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150"); (ii) The Mid-America Regional Bargaining Association, John Vignocchi, Tim Scully, and Joseph Benson (together the "MARBA Defendants"); and (iii) Charles August, Melinda Hensel, John Rabine, Ray Herron, Michael Kresge and Richard Dunlap (together the "Individual Union Defendants") pursuant to § 301 of the Labor Management Relations Act (the "LMRA"), Illinois common law civil conspiracy, and civil violation of the Racketeering Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962. The MARBA Defendants and the Individual Union Defendants move via two separate motions to dismiss Counts VII, XII and XIII.[1] Local 150 also moves to dismiss the RICO charge, Count XIII. The three Motions are granted in part and denied in part. The Motions to Dismiss are denied as to Counts VII and XII, and granted without prejudice as to Count XIII.

---

[1] In its Response to the MARBA Defendants' Motion to Dismiss and the Individual Union Defendants' Motion to Dismiss pursuant to Rule 12(b)(1), Merryman acknowledged that Counts I-XI of the Amended Complaint are not directed at the MARBA Defendants or the Individual Union Defendants, other than Count VII directed at John Rabine. Therefore, the MARBA Defendants' Motion to Dismiss and the Individual Union Defendants' Motion to Dismiss are denied as moot as to Counts I-XI with the exception of Count VII and John Rabine, addressed at the conclusion of this Memorandum Opinion.

## Plaintiff's Allegations

At the motion to dismiss stage, all of the plaintiff's allegations are accepted as true. In 2000, Merryman and Local 150 entered into a Memorandum of Agreement that incorporated an existing collective bargaining agreement (the "CBA") between Local 150 and MARBA. The CBA provides a three-step procedure to resolve disputes between an employer and Local 150. In "Step One," the parties hold an informal conference concerning the grievance. If Step One does not resolve the dispute, the parties have seven days to reduce the grievance to writing and refer it for a "Step Two" conference between officials from Local 150 and officials from the employer. If Step Two does not resolve the dispute, the parties have fifteen days to submit the written grievance to the Joint Grievance Committee ("JGC") for resolution. The CBA's provision for the JGC states:

> The union and [MARBA] have created a Joint Grievance Committee to resolve grievances under this agreement. This committee shall consist of an equal number of members representing Employers and the Union.

*See* Am. Cmplt. Ex. 13, Article XIII, Section 1, page 41. If the JGC enters an award against an employer, the CBA requires the employer to pay the aggrieved worker double rate for each hour that the aggrieved worker would have worked but for the employer's violation.

On August 2, 2006, the JGC held eight conferences for worker grievances, all involving Merryman, and awarded damages against Merryman for six of the eight grievances. The JGC on August 2, 2006 was comprised of either two or three representatives for Merryman and some or all of the six union members. Melinda Hensel, counsel for Local 150, attended all meetings of the JGC. Robert Hanlon, attorney representative for Merryman, voiced an objection at the August 2, 2006 meeting to the jurisdiction of the JGC. Merryman did not pay the grievance awards. On September

2

11, 2006, a member of Local 150 "threatened enforcement" of the six unpaid grievances awarded at the JGC on August 2.

On October 25, 2006, after Merryman had filed suit in this Court, a second JGC meeting occurred. Two members of Merryman and attorney Hanlon attended the JGC meeting. Hanlon again objected to the jurisdiction of the JGC. The JGC awarded damages against Merryman for three grievances. Merryman did not pay the additional grievance awards. On December 4, 2006, a member of Local 150 "threatened enforcement" of two of the three unpaid grievances awarded at the JGC meeting on October 25.

Merryman seeks a declaratory judgment that the nine monetary awards and two deadlocks reached by the JGC be declared void as impartial and outside the scope of the CBA. Merryman also alleges a claim of Illinois civil conspiracy against the MARBA Defendants and the Individual Union Defendants, and a civil RICO claim against all Defendants for mail fraud and extortion in furtherance of an illegal enterprise designed to cause Merryman harm.

<u>Standard of Review</u>

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6). When considering a motion under Rule 12(b)(6), a court must take as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). A Rule 12(b)(6) motion will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *see Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251

(7th Cir. 1994) (stating that "[m]atching facts against legal elements comes later"). Any conclusions pleaded, however, must "provide the defendant with at least minimal notice of the claim." *Kyle v. Morton High School,* 144 F.3d 448, 455 (7th Cir. 1998); *see Sanjuan*, 40 F.3d at 251 ("One pleads a 'claim for relief' by briefly describing the events").

### Counts XII and XIII - Arbitral Immunity

The MARBA Defendants and the Individual Union Defendants move in two groups to dismiss the entire Amended Complaint against them on grounds of arbitral immunity. The awards of joint grievance committees are reviewed with the same standards as those applied to arbitrations. *See International Union of Operating Engineers, Local 150, AFL-CIO v. Pease Const., Inc.*, 541 F. Supp. 1334, 1336 (N.D. Ill. 1982). Although Merryman does not challenge the merits of the decision but rather the composition of the JGC, "arbitral immunity should be extended to cases where the authority of an arbitrator to resolve a dispute is challenged." *Tamari v. Conrad*, 552 F.2d 778, 780 (7th Cir. 1977). If a party feels that the composition of the arbitration committee was biased, or failed to conform with the terms of the underlying CBA, the appropriate method of redress is a suit to set the award aside. *Id.* at 781. Merryman has brought suit appropriately against Local 150 (via Counts I-XI) to set aside the awards for improper composition of the panels.

But even if the Individual Defendants are arbitrators, the Amended Complaint adequately pleads the presence of a substantial exception to the rule of arbitral immunity: instances in which the arbitrators adjudicated a dispute over which they lacked jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 12 (1991) (judicial immunity can be overcome in narrow exception in which judge acted in complete absence of jurisdiction). While a narrow exception, the allegations of this suit present an unusual set of facts: the same union, and the same CBA, have been the subject of a previous court

4

ruling that unequal composition of the JGC committee members voids the JGC's jurisdiction over the dispute. *See MJ Electric, Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 2003 WL 21640474 (N.D. Ill. 2003). Based on this prior ruling, Merryman alleges that the MARBA Defendants and the Individual Union Defendants knew that the *MJ Electric* decision defined the jurisdiction of the JGC under the same CBA and involving the same union; in spite of this awareness, the JGC continued to hold meetings in direct defiance of the previous court's decision. Taking Merryman's facts as true, which the Court must do at this stage in the pleadings, if the JGC acted with knowledge that it lacked jurisdiction then arbitral immunity would not apply. Therefore, the Court will not dismiss the MARBA Defendants or the Individual Union Defendants at this stage in the proceedings.

### Count XII (Breach of Fiduciary Duty) - Failure to State A Claim

Merryman brings an Illinois state law claim for Civil Conspiracy to Breach Fiduciary Duty against both the Individual MARBA Defendants and the Individual Union Defendants. Merryman alleges that "as a member of the Joint Grievance Committee, each individual had a duty to both Merryman and Local 150 to adjudicate the grievance in a fair, impartial, and honest manner, and consistent with the grievance procedures set forth in the [CBA]." Am. Cmplt. at ¶ 212. Merryman alleges that each of the individual Defendants knew about the *MJ Electric* decision requiring equal members of both the employers and the Union at JGC meetings, yet continued to form JGCs with more Union representatives than employer representatives and continue to hear grievances and sanction employers. In short, Merryman alleges that the Individual Defendants conspired to deprive them of their property (in the form of sanction awards) by breaching their duty to review each grievance fairly and impartially.

5

The individual MARBA Defendants move to dismiss this claim alleging that no such duty of fairness and impartiality exists and therefore there can be no breach. "The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004). .

"A fiduciary relationship arises as a result of the special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." *Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.,* 161 F. Supp. 2d 876, 885 (N.D.Ill. 2001). Viewing the facts in the light most favorable to Merryman, Merryman alleges that both Merryman and Local 150 are parties to the CBA and agreed to be bound by its terms, including a binding grievance process that creates a duty on the part of the other participants in that process to resolve grievances fairly and impartially as to both parties. As alleged by Merryman, the Individual Defendants and the MARBA Defendants conspired to breach that duty to Merryman by holding hearings in which they knew they lacked jurisdiction, resulting in injury to Merryman in the form of adverse grievance awards. Merryman has adequately pleaded a claim for civil conspiracy to breach fiduciary duty under the liberal pleading requirements of Rule 8.

<u>Count XIII - The Civil RICO Claim</u>

Merryman has alleged that all Defendants committed violations of RICO under 18 U.S.C. § 1962(c) and conspiracy to commit RICO under 18 U.S.C. § 1962(d). All Defendants move to dismiss the civil RICO claim for failure to state a claim pursuant to Rule 12(b)(6) and Rule 9(b). Local 150 also moves separately to dismiss Count XIII on grounds that Merryman's civil RICO

allegations are preempted by § 301 of the LMRA.  To state a claim for a RICO violation, Merryman must allege a cognizable injury to its business or property resulting from conduct of an enterprise through a pattern of racketeering activity.  *See Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006).

Merryman's RICO claim alleges predicate acts of mail fraud and extortion in general terms. All Defendants move to dismiss the RICO claim for failure to plead a pattern of racketeering activity through predicate acts; in its Responses to the Motions to Dismiss, Merryman points to scattered allegations in its 227-count Amended Complaint.  The most detailed allegation of mail fraud a letter sent by someone at Local 150 to Mr. Patrick Merryman, on different dates, "advising him that Local 150 was proceeding to a 'Step Two' conference."  *See* Pltf. Local 150 Resp. at 12 (listing each paragraph containing a predicate act).  Allegations of fraud in a civil RICO allegation are subject to the heightened pleading standard, which requires that a plaintiff plead all averments of fraud with particularity.  Fed. R. Civ. P. 9(b); *see Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 726 (7th Cir. 1998). The only particular allegations of predicate acts of "mail and extortionate communications" are set forth in portions of the Amended Complaint unrelated to the RICO allegations, and are not set forth with the requisite level of detail required to fulfill the heightened pleading standard. Likewise, the entirety of Merryman's description of extortion is that Local 150 agent Steven Cisco "threatened enforcement" of the JGC awards.   The alleged threats, pleaded in the LMRA portion of the Amended Complaint, post-date the alleged racketeering activity pleaded in the RICO portion of the Amended Complaint.  The confusion caused by pleading general predicate acts throughout a 227-count complaint in the midst of numerous charges unrelated to RICO  may be curable by a more accurate pleading of the precise actions alleged against Defendants and their agents.

To the extent that Defendants claim that the RICO allegation must be dismissed because Merryman has pleaded no predicate acts for the other Defendants, Merryman need not plead acts for all Defendants in order to satisfy the element of § 1962(d), RICO conspiracy. "To prove a RICO conspiracy, the government must show: (1) an agreement to conduct or participate in the affairs (2) of an enterprise (3) through a pattern of racketeering activity." *U.S. v. Olson*, 450 F.3d 655, 664 (7th Cir. 2006). In a RICO conspiracy claim, those who are alleged to be part of the conspiracy can be held liable for the predicate acts of others within the conspiracy as long as the members agree to "adopt the goal of furthering or facilitating" the improper goals of the group. *See Salinas v. United States*, 522 U.S. 52, 64-65 (1997). The members of the RICO conspiracy must personally participate in the agreement to conduct the affairs of an enterprise, but they do not need to personally agree to perform the predicate acts; rather, the members need only agree that someone will perform the predicate acts. *See Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 965 (7th Cir. 2000). While there is no allegation that the MARBA Defendants or the Individual Union Defendants sent letters or made threats, Merryman's Amended Complaint will survive against the other Defendants if the MARBA Defendants and Individual Union Defendants are alleged to be part of the goal of furthering the endeavors of the enterprise that included these predicate acts. The Court dismisses the RICO allegation without prejudice because Merryman failed to plead the acts with particularity, not because Merryman failed to plead acts by each member of the conspiracy.

Additionally, in order to plead a RICO claim or a RICO conspiracy claim, the plaintiff must allege the existence and structure of an enterprise. *See Olson*, 450 F.3d at 664. A RICO enterprise may be either a legal entity or an "association in fact." *See Jennings v. Emery*, 910 F.2d 1434, 1440 (7th Cir. 1990). Merryman has failed to plead the existence of an "enterprise." In support of the

enterprise element, Merryman states that "paragraphs 27-218 of the Complaint identify in great detail the composition and purpose of the association, each Defendants' [sic] role in the association, how the association's conduct was unlawful, and how the association achieved its purpose." Pltf. Local 150 Resp. at 10. But Paragraphs 27-218 relate to the § 301 claims; while they provide some background to the facts of this RICO claim, they do not substantiate Merryman's vague allegations in the RICO claim that Defendants had an "association-in-fact" for purposes of RICO. There are no allegations of any structure, organization, or operation of the "enterprise," or allegations of Defendants' roles in that enterprise. *See Jennings*, 910 F.2d at 1440 (allegations that law enforcement personnel did various things does not create an "enterprise" when the allegations did not include the structure of the organization in which they were employed but rather alleged that the organization "supported" their efforts); *James Cape & Sons v. PCC Construction Co.*, 452 F.3d 396, 401 (7th Cir. 2006) ("[T]o participate in the conduct of a criminal enterprise for purposes of RICO liability, the defendant must exercise some role in the direction of the enterprise."); *EQ Financial, Inc. v. Personal Financial Co.*, 421 F. Supp. 2d 1138, 1146 (N.D. Ill. 2006) (dismissing a RICO claim where plaintiff outlined the roles but did not explain the origin, structure, operation, or hierarchy of the enterprise).

Because Merryman has not sufficiently pleaded the civil RICO allegations of § 1962(c) and § 1962(d), Merryman's RICO conspiracy claim (Count XIII) is dismissed without prejudice. In the event Merryman amends its civil RICO claim to comply with heightened pleading requirements, all Defendants may refile Motions to Dismiss Count XIII on any and all grounds, including § 301 preemption. Because issues of § 301 depend on the specifics of the RICO allegations, the Court will

not address the issue of preemption by § 301 of the LMRA without the benefit of a properly pleaded claim.

Count VII and John Rabine

Finally, Merryman states in its response to the Individual Union Defendants' Motion to dismiss that it seeks relief from John Rabine. The allegations pleaded in Count VII are identical to those pleaded in Counts I - VI and VIII - XI in that none of the allegations seek monetary damages from Defendants. Rather, the allegations seek a declaratory judgment the effect of which would void a monetary award. The only difference between Count VII and the other declaratory judgment counts is the location of the money that would be returned to Merryman. The money at issue in Count VII went to John Rabine personally while the money at issue in the other counts went into the Local 150 Assistance Fund. Because the effect of a favorable judgment would mandate monetary redress (though not damages) from John Rabine to Merryman, Count VII is properly pleaded as to John Rabine as well as Local 150.

Conclusion

The Local 150, MARBA Defendants' and Individual Union Defendants' Motions to Dismiss the Amended Complaint are granted in part and denied in part. The Individual Union Defendants' Motion to Dismiss Count VII is denied as to John Rabine. The Motions to Dismiss Counts I-XI are denied as moot with respect to both the MARBA Defendants and the Individual Union Defendants in light of Merryman's representation that Counts I-XI are directed only toward Local 150 (and Rabine in Count VII). The Motions to Dismiss are denied as to Count XII and granted without prejudice as to Count XIII. Merryman shall replead Count XIII within 14 days, after which time all

Defendants may refile Motions to Dismiss Count XIII on any and all grounds, including preemption by § 301 of the LMRA.

												_____
												Virginia M. Kendall, United States District Judge
												Northern District of Illinois

Date: April 25, 2007