IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MERRYMAN EXCAVATION, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 06 C 5160 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| INTERNATIONAL UNION OF OPERATING | ) | |
| ENGINEERS, LOCAL 150, AFL-CIO, *et al.*, | ) | |
| | ) | |
| Defendant . | ) | |

MEMORANDUM OPINION AND ORDER

Merryman Excavation, Inc. ("Merryman") filed suit against: (i) International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150"); (ii) The Mid-America Regional Bargaining Association ("MRBA"), John Vignocchi, Tim Scully, and Joseph Benson (collectively "the MARBA Defendants"); and (iii) Charles August, Melinda Hensel, John Rabine, Ray Herron, Michael Kresge and Richard Dunlap (collectively "the Individual Union Defendants") alleging violations of § 301 of the Labor Management Relations Act (the "LMRA"), Illinois common law civil conspiracy, and civil Racketeering Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962. The MARBA Defendants and the Individual Union Defendants moved via two separate motions to dismiss Count XIII, the RICO charge. For the reasons stated herein, Defendants' Motions to Dismiss are granted and Count XIII is dismissed with prejudice.

Procedural History

On January 16, 2007, Merryman filed its First Amended Complaint alleging, among other allegations, that Defendants violated the RICO Act. On April 25, 2007, this Court dismissed

1

Merryman's RICO claim without prejudice. In its order, the Court instructed Merryman to re-plead Count XIII within 14 days after which time Defendants could re-file motions to dismiss Count XIII on any and all grounds including preemption by § 301 of the LMRA. The Court did not address the issue of preemption by § 301 because the resolution of the issue depended upon the specifics of the RICO allegations and the Court found that Merryman did not properly plead a RICO claim. Merryman filed a Third-Amended Complaint repleading the RICO claim.

### Merryman's Allegations

At the motion to dismiss stage, all of the plaintiff's allegations are accepted as true. Merryman is an Illinois Corporation engaged in the business of installing underground sewer piping. 3d Am. Cplt. ¶ 9. Local 150 is a labor organization representing members throughout Illinois, Iowa, and Indiana. *Id*. at ¶ 10. MARBA is an Illinois corporation made up of multi-employer associations representing contractor-employers in the Chicago area. On or about April 1, 2000, Merryman entered into a Memorandum of Agreement with Local 150 that incorporated an existing collective bargaining agreement (the "CBA") between Local 150 and MARBA. *Id*. at ¶ 31. By virtue of the Memorandum, Merryman became bound by two substantially similar "Master Agreements" known as the Illinois Heavy Highway and Underground Agreements. *Id*. at ¶ 31.

The CBA provides a three-step procedure to resolve disputes between an employer and Local 150. *Id*. at 33-34. In the first phase of the procedure, the CBA requires that the parties hold an informal conference concerning the grievance ("Step One"). If this fails to resolve the dispute, the parties are required to reduce the grievance to writing within seven days and conduct a conference between officials from Local 150 and from the employer ("Step Two"). If this fails to resolve the dispute, the parties must submit the written grievance to the Joint Grievance Committee ("JGC")

for resolution within fifteen days ("Step Three"). As for the composition of the JGC, the CBA requires that the "committee shall consist of an equal number of members representing Employers and the

Union." *See* 3d Am. Cplt. ¶ 36; Ex. C, Article XIII, Section 1, page 41. If the JGC enters an award against an employer, the CBA requires the employer to pay the aggrieved worker double rate for each hour that the aggrieved worker would have worked but for the employer's violation.

On August 2, 2006, the JGC held eight conferences for worker grievances involving Merryman. The JGC comprised either two or three representatives from Merryman and some or all of the six union members. The JGC awarded damages against Merryman for six of the eight grievances. During the conference, Robert Hanlon, attorney representative for Merryman, voiced an objection to the JGC's jurisdiction. *Id.* at ¶ 48. Specifically, Merryman complained that the JGC failed to comply with the provisions of the CBA and JGC's procedural rules because Local 150 and Merryman did not engage in a Step One conference, Local 150's request for a Step Two conference was beyond the prescribed seven business days from the purported Step One conference, and the Step Three conference was beyond the prescribed 15 days from the Step Two conference. Additionally, Merryman alleged that Local 150 did not engage in a meaningful attempt to resolve the grievance prior to its submission to the JGC; there were more union representatives present at the proceeding than employer representatives; and the award improperly directed payment by Merryman to Local 150. Merryman also alleged that the JGC's procedural rules were violated when Joseph Vignocchi ("Vignocchi"), a voting member of the union and 18-year member of the JGC, left the August 2, 2006 proceedings reducing the required quota of three to two.

Merryman refused to pay the grievance awards and on September 11, 2006, a member of Local 150 "threatened enforcement" of the six unpaid grievances. *Id.* at ¶ 133, 149. In Merryman's

RICO claim, Merryman pleads that Defendants committed acts of mail fraud and extortion in violation of 18 U.S.C. § 1341 and § 1951 when they mailed letters to Merryman associated with the August 2 conference, threatened "job action" for noncompliance with the JGC orders, and wrongfully directed Merryman to comply with the awards. *Id*. at ¶ 237 (a)- (oo).

On October 25, 2006, after Merryman had filed suit in this Court, a second JGC meeting occurred. *Id*. at 167. This time, the JGC awarded damages against Merryman for three grievances. *Id.* at ¶ 170. Two members of Merryman and attorney Hanlon attended the JGC meeting. Hanlon again objected to the jurisdiction of the JGC for the same reasons set forth during the August 2, 2006 conference. *Id.* at ¶¶ 177, 188.

Merryman refused to pay the additional grievance awards and on December 4, 2006, a member of Local 150 "threatened enforcement" of two of the three unpaid grievances awarded at the JGC meeting on October 25. In Merryman's RICO claim, Merryman pleads that Defendants committed acts of mail fraud and extortion in violation of 18 U.S.C. § 1341 and § 1951 when they mailed letters to Merryman associated with the October 25 conference, threatened "job action" for noncompliance with the JGC orders, and wrongfully directed Merryman to comply with the awards. *Id*. at ¶ 237 (oo)- (aaa). Merryman pleaded that Local 150 extorted money from Merryman by convincing Merryman to settle four of the grievances. ¶ 237 (bbb)(ddd)(eee)(hhh).

Merryman seeks a declaratory judgment that the nine monetary awards and two deadlocks reached by the JGC be declared void as impartial and outside the scope of the CBA. Merryman also alleges a claim of Illinois civil conspiracy against the MARBA Defendants and the Individual Union Defendants, and a civil RICO claim against all Defendants for mail fraud and extortion in furtherance of an illegal enterprise designed to cause Merryman harm.

4

## Standard of Review

Motions to Dismiss are construed in the light most favorable to the plaintiff. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). The court must take as true "all well-pleaded factual allegations and making all possible inferences from those allegations in" the plaintiff's favor. *Id.* (citation omitted). In order to state a claim, a plaintiff must allege facts that plausibly suggest he is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 2007 WL 1461066, *8 (May 21, 2007). To allege plausible grounds for relief, the complaint must allow a "reasonable expectation" that discovery will reveal evidence of illegality. *Id.* at 1965. If the allegations do not suggest such a right to relief, "the plaintiff pleads itself out of court." *Id.*

## Merryman's RICO claim is Preempted by § 301

Defendants move to dismiss Count XIII of the Third-Amended Complaint, the civil RICO claim, for lack of subject matter jurisdiction, as well as for other deficiencies. Defendants argue that the civil RICO claim is preempted by § 301 of the LMRA. Section 301(a) of the LMRA states, in relevant part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 authorizes federal courts to "fashion a body of federal common law to be used to address disputes arising out of labor contracts", including suits to enforce or vacate arbitration awards. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985); *General Drivers, Warehousemen & Helpers Local 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963). "The preemptive force of § 301 displaces any independent federal or state cause of action when the claim concerns a

5

legitimate labor dispute and involves the breach of a collective bargaining agreement." *U.S. v. Palumbo*, 145 F.3d 850, 864 (7th Cir. 1998), *citing Allis-Chalmers*, 471 U.S. at 211. A suit brought under § 301 will not displace a federal claim if that claim: (i) involves the application of an independent federal statute and (ii) concerns "only collateral issues of labor law." *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244 (1959).

The preemptive effect of Section 301 of the LMRA is broad. *See, e.g. Allis-Chalmers*, 471 U.S. 202. Yet, not every allegation that involves a provision of the CBA is automatically preempted by Section 301. *Id.* at 211. For example, when "the meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *See Lividas v. Bradshaw*, 512 U.S. 107, 129 (1994). This question becomes: is the dispute "substantially dependent" upon an analysis of the terms of the CBA? *See Loewen Group Int'l, Inc. V. Haberichter*, 65 F.3d 1417, 1421 (7th Cir. 1995). The Court must look to the facts alleged and make a determination as to whether the CBA is merely referenced or requires interpretation. *See, e.g. Atchley v. Heritage Cable Vision Associates*, 101 F.3d 495, 499 (7th Cir. 1996)(Determining wage increases and bonuses required interpretation of CBA's provisions governing amount, method and timing of bonuses and wages).

Here, the Court looks to the allegations set forth in the RICO count and notes that the allegations focus significantly upon the composition of the JGC, the procedures set forth for filing grievances, and the imposition of sanctions resulting from adjudicated grievances. Each of these allegations requires interpretation of separate provisions of the CBA. In situations such as this, courts have found that civil RICO claims are completely preempted by Section 301. *See Talbot v. Robert Matthews Distribution Co.*, 961 F. 2d 654, 661-63 (7th Cir. 1992)(both RICO and fraud

allegations regarding alleged improper transfer of work without a union vote pre-empted); *Chicago District Council of Carpenters Pension Fund v. Ceiling Wall Systems, Inc.* 915 F. Supp. 939, 944 (N.D. Ill. 1996) (RICO claim alleged fraudulent scheme to defraud multi-employer plans by using corporate names interchangeably on paychecks enabling defendants to circumvent their obligations to submit full contributions to the Funds was pre-empted by Section 301); *Brown v. Keystone Consolidated Industries*, 680 F. Supp. 1212, 1224-25 (N.D. Ill. 1988)(RICO claim alleged fraudulent deprivation of employment benefits preempted due to need to interpret CBA's Pension Agreement and Shutdown Agreement).

Although the parties dispute the applicability of *Underwood v. Venango River Corp,* 995 F.2d 677, 684 (7th Cir. 1992), in which the Seventh Circuit held that RICO was preempted by the Railway Labor Act ("RLA"), the *Underwood* provided a framework for courts to use when analyzing preemption, albeit, pursuant to another statutory scheme. The Court set forth the following two-step analysis after reviewing the applicable Supreme Court and Circuit law:

> The first step asks whether the claim seeks to vindicate a substantive right derived from some source other than the collective bargaining agreement. . . If a claim survives the first inquiry, the second step asks whether adjudication of the claim requires interpretation of the CBA. When such interpretation is required, it impermissibly interferes with the federal scheme for labor dispute resolutions.

*Underwood*, 995 F.2d at 684.

A similar analysis is helpful to this case. The redress Merryman seeks through its RICO claim will not vindicate a substantive right that is independent from a right granted to it via the CBA. All of the facts of the underlying suit concern judgments that Merryman alleges Local 150 obtained in violation of the terms of the CBA, and acts by Local 150 to enforce those judgments. Merryman's pleaded predicate acts for a RICO charge are mailings to demand payment of the

7

judgments and to threaten work stoppages and other union action absent payment of the judgments. Local 150's acts in sending mailings are only illegal if Local 150 had no contractual right to send them, a fact that is contingent upon determination of the terms of the CBA. *See Brown*, 680 F. Supp. at 1226) (when determining whether RICO claim is preempted Courts must look at the underlying fraud which makes the use of the mail actionable.) Put another way, whether Defendants committed mail fraud and extortion allegations hinges upon a finding that the underlying decisions of the JGC were invalid or were otherwise inconsistent with the terms and spirit of the CBA. Thus, the labor law questions are central, and not collateral to Merryman's RICO claim. *See also Mariah Boat, Inc. v. Laborers International Union of North America*, 19 F. Supp. 2d 893, 899 (S.D. Ill. 1998)(RICO claims are not preempted if they were merely of peripheral concern to federal labor laws). Merryman has pleaded its RICO claim as such, alleging that the "manner and means of racketeering" include: (i) "they misrepresented the contractual terms of the [CBA]; (ii) "they falsely represented the authority of the Joint Grievance Committee;" and (iii) "they falsely promised to conduct themselves in accordance with the [CBA]." The remedy that Merryman seeks - to void judgments unfairly obtained, and to enjoin Local 150 from taking acts to enforce those invalid judgments- are remedies to which Merryman claims it is guaranteed by the CBA.

Additionally, the resolution of Merryman's claim requires interpretation of the CBA, and not "a mere glance at it." *See In re Bentz Metal Products Co.*, 253 F.3d 283, 289 (7th Cir. 2001). Merryman argues that this case does not require an interpretation of the CBA because Local 150 has already received a judgment against it on the basis of this same CBA, in similar circumstances, and that judgment binds Local 150 such that this Court cannot interpret the CBA. *See MJ Electric, Inc. v. Int'l Union of Operating Eng'rs, Local 150,* 2003 WL 21640474 (N.D. Ill. 2003) (Committee's

8

award unenforceable because committee not comprised of equal number of employer representatives). First, Merryman provides no case support for its position that the *MJ Electric* case has a *res judicata* effect upon this case; in truth, it involved different parties. Second, only part of the allegations in the Third-Amended Complaint concern the issues raised in *MJ Electric*, namely, the presence of equal numbers of Local 150 and Merryman representatives at the Step Three JGC meetings. The Third-Amended Complaint also contains allegations that Local 150 violated the terms of the CBA with respect to Step One and Step Two of the grievance process, aspects of the CBA that were not addressed in the *MJ Electric* case. Because the RICO claim seeks to vindicate rights derived from the CBA, and because any adjudication of the RICO claim would require this Court to interpret the CBA, the facts as pleaded in the Third-Amended Complaint compel a finding of preemption by § 301.

Merryman argues that "to find [preemption] would literally grant unions and other parties to CBAs a license to cheat, steal, extort, and commit acts of violence to achieve nefarious goals under the guise of a 'legitimate labor dispute' over the terms of a CBA." Pl. Resp. MARBA, p. 11. Yet, Merryman does not plead such allegations by the MARBA defendants in its Third-Amended Complaint and the allegations which it pleaded are no less actionable because Merryman's RICO claim is preempted by § 301. Section 301 only precludes Merryman's right to pursue a "unique" cause action where, such as the present case, the underlying predicate acts are based upon an "obligation ....created by the collective bargaining agreement." *Chicago District*, 915 F. Supp. at 944. Although a RICO claim is attractive to plaintiffs due to its provision of treble damages, it is not Merryman's only avenue of recourse in this matter. *See Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) ("The widespread abuse of civil RICO stems from...the fact that RICO

9

offers a far more generous compensation scheme than typically available in state court.").

Merryman's RICO claim is preempted by § 301 and is dismissed with prejudice. Because this Court finds that Merryman's RICO claim is preempted by § 301, there is not need to consider the remainder of Defendants' arguments associated with their Motions to Dismiss Count XIII.

Conclusion and Order

For the foregoing reasons, Defendants' Motions to Dismiss Count XII are granted and Count XIII is dismissed with prejudice.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:  February 25, 2008